**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 7 |
| | § | |
| MARBACH ASSOCIATES, LLC, | § | |
| DIAMAOND MANAGEMENT, INC. | § | CASE NO. 25-50815 (MMP) |
| | § | CASE NO. 25-50816 (MMP) |
| | § | |
| Alleged Debtors. | § | Jointly Administration Requested |

**BRIEF IN SUPPORT OF THE ALLEGED DEBTORS'**
**MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

SUMMARY JUDGMENT FACTS .............................................................................................. 3

RELIEF REQUESTED AND BASES THERFOR ..................................................................... 9

    A.    Legal Standard: Summary Judgment ........................................................................ 9

    B.    The Alleged Debtors Are Entitled to Judgment as a Matter of Law Regarding Its Eligibility to be a Debtor Under Bankruptcy Code section 303 – Bona Fide Dispute ...................................................................................................................... 11

    C.    The Alleged Debtors Are Entitled to Judgment as a Matter of Law Regarding Its Eligibility to be a Debtor Under Bankruptcy Code section 303 – Not Paying Debts as Such Debts Come Due ...................................................................... 14

    D.    The Alleged Debtors Are Entitled to Judgment as a Matter of Law with Respect to Vega's Bad Faith.................................................................................. 15

    E.    The Alleged Debtors Are Entitled to Judgment as a Matter of Law Regarding Costs and Fees Under Bankruptcy Code section 303(i) ........................................... 17

    F.    Absent Dismissal Under Bankruptcy Code section 303, the Court Should Abstain Under Bankruptcy Code section 305.......................................................... 18

RESERVATION OF RIGHTS ................................................................................................... 19

CONCLUSION............................................................................................................................ 19

CERTIFICATE OF SERVICE ................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*In re Acis Capital Mgmt., L.P.*,
  584 B.R. 115 (Bankr. N.D. Tex. 2018).................................................................. 18, 19

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)............................................................................................ 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................ 10

*In re Bates*,
  545 B.R. 183 (Bankr. W.D. Tex. 2016)............................................................ 14, 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................ 10

*In re Briggs*,
  Nos. 07-34534, 07-34533, 2008 Bankr. LEXIS 4354 (Bankr. N.D. Tex. Jan. 18,
  2008)………………………………………………………………………………..13

*Calpetco 1981 v. Marshall Exploration, Inc.*,
  989 F.2d 1408 (5th Cir. 1993) ............................................................................ 10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)........................................................................................ 10, 11

*In re Clean Fuels Techs. II, LLC*,
544 B.R. 591 (Bankr. W.D. Tex. 2016)        17

*Credit Union Liquidating Servs., L.L.C. v. Green Hills Dev. Co.*
  *(In re Green Hills Dev. Co.)*, 741 F.3d 651 (5th Cir. 2014) .................................... 15

*In re Ebackpack*,
  605 B.R. 126 (Bankr. N.D. Tex. 2019)................................................................ 12

*In re First Financial Enterprises, Inc.*,
  99 B.R. 751 (Bankr. W.D. Tex. 1989)................................................................ 15

*In re Forever Green Athletic Fields, Inc.*,
  804 F.3d 328 (3d Cir. 2015)................................................................................ 16

*Fustolo v. 50 Thomas Patten Drive, LLC*,
  816 F.3d 1 (1st Cir. 2016)................................................................................... 13

*In re Gutierrez*,
  No. 20-50129-NPO, 2020 Bankr. LEXIS 1304 (Bankr. S.D. Miss. May 15, 2020) .................. 9

*In re Haymond*,
633 B.R. 520 (Bankr. S.D. Tex. 2021……………………………………………………..9, 10, 11

*In re Henry S. Miller Commer., LLC*,
418 B.R. 912 (Bankr. N.D. Tex. 2009)...................................................................... 13

*In re Landmark Distribs., Inc.*,
189 B.R. 290 (Bankr. D. N.J. 1995) ......................................................................... 19

*Marciano v. Chapnick (In re Marciano)*,
708 F.3d 1123 (9th Cir. 2013) ................................................................................. 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)................................................................................................. 11

*In re Norris*,
114 F.3d 1182 (5th Cir. 1997) ................................................................................. 13

*In re Privada, Inc.*,
No. 07-10940 FRM, 2008 Bankr. LEXIS 2717  (Bankr. W.D. Tex. Oct. 22, 2008).......... 15, 16

*In re Seven Three Drilling Co., L.L.C.*,
No. 21-10219, 2021 Bankr. LEXIS 2072 (Bankr. E.D. La. Aug. 4, 2021) ........................ 12, 16

*In re Sherwood Enters., Inc.*,
112 B.R. 165 (Bankr. N.D. Tex. 2018)..................................................................... 18

*Subway Equip. Leasing Corp. v. Sims (In re Sims)*,
994 F.2d 210 (5th Cir. 1993) ............................................................................. 12, 17

*In re Synergistic Techs., Inc.*,
No. 07-31733-SGJ-7, 2007 Bankr. LEXIS 2060  (Bankr. N.D. Tex. Aug. 6, 2007)................ 16

*Taita Chem. Co. v. Westlake Styrene Corp.*,
246 F.3d 377 (5th Cir. 2001) ............................................................................. 10, 11

**Rules**

FED. R. BANKR. P. 7056 ................................................................................... 10

FED. R. BANKR. P. 1011 ..................................................................................... 9

FED. R. OF BANK. P. 1003(b)............................................................................ 10

FED. R. BANKR. P. 9009(a)............................................................................... 10

FED. R. CIV. P. 12............................................................................................ 10

FED. R. CIV. P. 56 ................................................................................................................ 12

TEX. R. CIV. P. 329b ............................................................................................................. 7

TEX. R. CIV. P. 621a ............................................................................................................. 8

TEX. R. CIV. P. 627 ............................................................................................................... 8

TEX. R. APP. P. 24.1 .......................................................................................................... 7, 13

TEX. R. APP. P. 24.2 ............................................................................................................. 7

TEX. R. APP. P. 25.1 ............................................................................................................. 8

TEX. R. APP. P. 42.1(b)(2) .................................................................................................... 8

TEX. R. APP. P. 8.1 ............................................................................................................... 9

**State Code**

TEX. CIV. PRAC. & REM. CODE § 52.006 ............................................................................... 7

**Federal Code**

11 U.S.C. § 303 ............................................................................................................. passim

11 U.S.C. § 303(h) ........................................................................................... 2, 12, 13, 14, 15

11 U.S.C. § 303(i) ..................................................................................................... 2, 15, 17, 18

11 U.S.C. § 303(e) ............................................................................................................... 19

11 U.S.C. § 305 .............................................................................................................. 2, 18

11 U.S.C. § 305(a) .............................................................................................................. 18

Marbach Associates, LLC ("**Marbach**") and Diamond Management, Inc. d/b/a Diamond Management ("**Diamond**"), the alleged debtors in the above-captioned involuntary cases (the "**Alleged Debtors**") commenced pursuant to section 303 of title 11 of the United States Code (the "**Bankruptcy Code**"), hereby jointly submit this brief (the "**Brief**") in support of the Alleged Debtors' joint motion for summary judgment (the "**Motion**") seeking dismissal of the involuntary Chapter 7 petitions filed against the Alleged Debtors by petitioning creditor Julie Vega ("**Vega**"). In support thereof, the Alleged Debtors respectfully state as follows:

## **PRELIMINARY STATEMENT**

1.      Marbach and Diamond formerly owned and managed, respectively, the apartment complex where Vega lived. In or about June of 2022, Marbach sold the apartment complex. Diamond ceased operations in July of 2022. The Alleged Debtors each currently have de minimus assets. The Alleged Debtors have, however, vigorously defended themselves against a state court lawsuit brought by Vega. Vega obtained a judgment against the Alleged Debtors and, pursuant to applicable state law, the judgment has been stayed through the posting of a supersedeas bond. The Alleged Debtors were proceeding forward with their right of appeal in state court when Vega filed involuntary Chapter 7 bankruptcy petitions against them.

2.      As of the filing of the petition against Diamond, Vega was Diamond's only creditor. As of the filing of the petition against Marbach, Marbach had two creditors, including Vega. Since the filing of the petition against Marbach, the other Marbach creditor has nonsuited its litigation that was pending in Bexar County, Texas. Therefore, as of the filing of this Brief, Vega is the only creditor for both Alleged Debtors.

3.      Vega has not alleged—and would have no basis for alleging—that the Alleged Debtors' de minimus assets are wasting or otherwise in jeopardy of being misappropriated. In the

course of the underlying litigation, Vega has made clear that she is aware of the various levels of insurance policies that would more than cover her claim following the exhaustion of appeals. These reasons alone establish that these involuntary Chapter 7 bankruptcy cases have no basis. Any bankruptcy case—including an involuntary filing—is a collective process for the benefit of creditors. Bankruptcy is designed as a shield to protect debtors, not as a sword to further the litigation strategy of a single creditor. Vega filed these involuntary bankruptcy cases against the Alleged Debtors as a litigation tactic to arrest or otherwise disturb the appellate process that the Alleged Debtors were lawfully pursuing following the entry of a judgment by the state court.

4.      As set forth in this Brief, the Alleged Debtors are not eligible to be a debtor under Bankruptcy Code section 303(h)(1) because they have at all times disputed the claim of this sole creditor in its entirety. The entry of the judgment does not change this fact. Rather, the proper posting of a bond by the Alleged Debtors stayed the judgment and provided Vega with all of the protections she was entitled to under the law. The facts and circumstances of this matter demonstrate that Vega filed the petition in bad faith as a mere litigation tactic. Thus, the Alleged Debtors are entitled to costs and fees under Bankruptcy Code section 303(i)(1) and the Court should further sanction Vega under Bankruptcy Code section 303(i)(2) in order to punish this egregiously unlawful behavior.

5.      Finally, even if the Court does somehow determine that the Alleged Debtors are properly a debtor in this case, the Court should abstain and dismiss the case under Bankruptcy Code section 305 on the basis that the matter should proceed forward in the Texas courts of appeal. Simply put, there is no reason for this matter to be put into the hands of a Chapter 7 trustee and administered for this Court.

## SUMMARY JUDGMENT FACTS

6. Vega was a resident of an apartment complex in San Antonio called Polo Club. Polo Club was owned by Marbach and managed by Diamond. On November 8, 2021, Vega's ex-boyfriend and former roommate Shane Jernigan ("**Jernigan**") obtained entry to Vega's apartment through alleged misrepresentations made to Diamond maintenance personnel. Jernigan lay in wait for Vega and when she arrived home from work they spoke for several hours. Later that evening, Jernigan attempted to murder Vega with a knife. Vega sustained injuries and has alleged other damages.

7. In 2022, Vega brought suit (the "**Lawsuit**") against Marbach, and later amended her suit to include Diamond, in the 37th Judicial District Court in Bexar County, Texas. The Lawsuit concerned claims brought by Vega alleging that the Alleged Debtors were negligent as to safety procedures at its apartment complexes. Specifically, Vega alleged that the Alleged Debtors were liable for negligence, gross negligence, and trespass as it related to Jernigan's criminal assault. A copy of Vega's *Fourth Amended Petition* dated July 7, 2023 (the "**Fourth Amended Petition**") is attached hereto as **Exhibit 1**.

8. Jernigan was subsequently held criminally liable for aggravated assault with a deadly weapon and was sentenced to twenty years in state prison. A copy of the *Judgment of Conviction by Court* is attached hereto as **Exhibit 2**.

9. Vega, the Alleged Debtors, and Jernigan are the only parties to the Lawsuit. Vega is the sole creditor to both Alleged Debtors. Her status as such relates only to the Lawsuit.

10. The Alleged Debtors expressly denied all liability relating to Vega's injuries or any criminal conduct detailed in the Fourth Amended Petition. The Alleged Debtors took the position—and maintain—that the claims in Vega's Fourth Amended Petition were supported by no, or insufficient, evidence and patently mischaracterized the applicable legal standard.

3

11. Throughout the pendency of the Lawsuit, the Alleged Debtors vigorously litigated the matter and denied liability for Vega's injuries caused by Jernigan's criminal assault. For example, on August 19, 2024, the Alleged Debtors addressed Vega's flawed pleading in its *Defendants' Traditional and No-Evidence Motions for Summary Judgment* (the "**Motion for Summary Judgment**"). A copy of the Motion for Summary Judgment is attached hereto as **Exhibit 3**. The Motion for Summary Judgment presented substantial evidence that, under the applicable legal standard, the Alleged Debtors bore no liability for Vega's injuries.

12. Following the Alleged Debtors' denial of liability based on the applicable law and facts of the Lawsuit, Vega moved for Spoliation Instructions and Sanctions against the Alleged Debtors for the alleged loss or destruction of a key log she alleged would have identified whether a maintenance worker let Jernigan into her apartment.

13. On October 30, 2024, the Honorable Cynthia Marie Chapa, presiding judge of the 288th Judicial District Court signed an *Order Granting Plaintiff's Motion for Spoliation Instructions and Sanctions* (the "**Spoliation Order**"). A copy of the Spoliation Order is attached hereto as **Exhibit 4**. The Spoliation Order imposed sanctions against the Alleged Debtors, ordering that the jury may consider the evidence allegedly destroyed as having been unfavorable to Polo Club on the issues of breach of duty and proximate causation. The order denied Polo Club the right to testify, solicit testimony, present evidence, or argue that its maintenance employee did *not* let Jernigan into Vega's apartment on November 8, 2021.

14. On November 19, 2024, the Alleged Debtors moved to reconsider the Spoliation Order, which severely undermined their ability to defend against Vega's Lawsuit and present evidence at the trial set for December 16, 2024. The parties argued the motion before the Honorable Cynthia Marie Chapa on December 3, 2024. On December 9, 2024, the Alleged Debtors, as

4

"Realtors," filed the *Realtors Petition for Writ of Mandamus* (the "**Petition for Mandamus Relief**") seeking a temporary stay of the pending jury trial to allow for proper review of its Petition for Mandamus Relief regarding the spoliation order. A copy of the Petition for Mandamus Relief is attached hereto as **Exhibit 5**.

15.     Importantly, the Alleged Debtors argued that Vega failed to apply or satisfy the proper standard for Spoliation which required the spoliating party to, first, have had a duty to reasonably preserve the information and, second, prove that the party breached that duty. In addition, the Alleged Debtors argued that Vega had not shown intentional spoliation, since the property was sold while the key log was still within its management office, and that any destruction of the key log was the result of the purchaser.

16.     On December 12, 2024, just four days before trial, the Honorable Cynthia Marie Chapa issued her Judge's Notes stating that the Motion for Reconsideration was granted in part and denied in part, and that the court was removing its previously ordered prohibition on testimony or argument about whether a maintenance employee allowed Jernigan into the apartment. However, the court maintained the sanction in place of an adverse spoliation instruction to be given to the jury. The court of appeals denied the Alleged Debtors' petition for writ of mandamus that same day, and the Texas Supreme Court denied the Alleged Debtors' petition for writ of mandamus on December 16, 2024.

17.     Despite the Alleged Debtors' efforts to address the grave due process concerns inherent in a spoliation instruction to the jury, the jury trial took place on December 16, 2024. After a week-long trial, the jury ruled in favor of Vega on December 23, 2024.

18.     Following trial, on December 20, 2024, the Alleged Debtors filed their *Motion for Partial Directed Verdict* (the "**Motion for Partial Directed Verdict**"), and, on December 23,

2024, filed their *Defendants' Motion for Directed Verdict* (the "**Motion for Directed Verdict**") (collectively, the "**Motions for Directed Verdict**"). A copy of the Motions for Directed Verdict are attached hereto as **Exhibit 6**.

19. In Motions for Directed Verdict, the Alleged Debtors again urged that a number of legal and evidentiary issues barred Vega from recovery against the Alleged Debtors, including but not limited to: the wrongful submission of the claims to the jury as ordinary negligence rather than premises liability, Vega's failure to submit evidence in support of a premises liability claim, Vega's failure to submit evidence of negligence in light of there being no duty owed to Vega to protect from third-party criminal conduct, and Vega's failure to submit any evidence of the Alleged Debtors' conduct that would support liability or justify a finding of joint enterprise. The district court denied the entirety of the Alleged Debtors' motions for directed verdict.

20. On January 24, 2025, the State District Court entered its *Final Judgment* (the "**Judgment**") assessing monetary damages against the Alleged Debtors. A copy of the Judgment is attached hereto as **Exhibit 7**.

21. Following the Judgment and considering the multiple errors in applicable standards of law and lack of evidence presented, or allowed, in the Lawsuit, the Alleged Debtors pursued additional remedies available to them under state law. On February 21, 2025, the Alleged Debtors filed their *Motion for Judgment Notwithstanding the Verdict* (the "**Motion for Judgment Notwithstanding the Verdict**"). A copy of the Motion for Judgment Notwithstanding the Verdict is attached hereto as **Exhibit 8**. The motion requested, for the reasons set forth therein, that the Court disregard the jury findings and render judgment that the Alleged Debtors take nothing.

22. Contemporaneously with the Judgment Notwithstanding the Verdict, the Alleged Debtors, filed a *Motion for New Trial, or Alternatively, Motion for Remittitur* (the "**Motion for New Trial**"). A copy of the Motion for New Trial is attached hereto as **Exhibit 9**.

23. On April 8, 2025, the district court shared its Judge's Notes denying both the Motion for Judgment Notwithstanding the Verdict and the Motion for New Trial. The motion for new trial was set to be overruled by operation of law on April 9, 2025. *See* TEX. R. CIV. P. 329b.

24. On March 17, 2025, the Alleged Debtors filed a *Notice of Supersedeas Bond* pursuant to Rules 24.1 and 24.2 of the Texas Rules of Appellate Procedure and Section 52.006 of the Texas Civil Practice and Remedies Code. A copy of the Notice of Supersedeas Bond is attached hereto as **Exhibit 10**.

25. The Notice of Supersedeas Bond stated the Alleged Debtors' intent to appeal the Judgment to the Fourth Court of Appeals in San Antonio, Texas and, if necessary, to the Supreme Court of Texas. In support of the supersedeas bond, Marbach attached the *Affidavit of Net Worth of Marbach Associates, LLC*, signed by Leland Evans, Marbach's managing member (the "**Marbach Affidavit of Net Worth**"). A copy of the Marbach Affidavit of Net Worth is attached hereto as **Exhibit 11**. The amount of the supersedeas bond is capped at half of Marbach's net worth pursuant to Texas law.

26. Also in support of the supersedeas bond, Dimond attached the *Affidavit of Net Worth of Diamond Apartment Management, Inc.*, signed by Stacey Moos, Diamond's president (the "**Diamond Affidavit of Net Worth**"). A copy of the Diamond Affidavit of Net Worth is attached hereto as **Exhibit 12**. The Diamond Affidavit of Net Worth advises that Diamond ceased ongoing operations in June of 2022 and that Diamond has no assets.

27.     The supersedeas bond was effective upon filing and stayed the Judgment pursuant to the Texas Rule of Appellate Procedure 42.1(b)(2).[1]

28.     Vega demonstrated the continuing post-Judgment disputes among the parties by thereafter serving post-judgment discovery requests on the Alleged Debtors. The Alleged Debtors responded with objections on multiple bases including the conclusion of litigation at the trial court, the Alleged Debtors' stated intention to file a notice of appeal by the applicable deadline, and the stay imposed against Vega's judgment pursuant to the supersedeas bond filed by the Alleged Debtors.[2]

29.     On April 17, 2025, the Alleged Debtors filed their *Notice of Appeal* (the "**Notice of Appeal**") appealing the District Court's Judgment to the Fourth Circuit Court of Appeals in San Antonio, Texas. The Alleged Debtors reserved the right to amend the notice under Texas Rule of Appellate Procedure 25.1(g). A copy of the Notice of Appeal is attached hereto as **Exhibit 13**.

30.     On April 17, 2025, a matter of minutes after the Alleged Debtors filed the Notice of Appeal, Vega filed involuntary Chapter 7 petitions under Bankruptcy Code section 303 (the "**Petitions**") against each of the Alleged Debtors.

31.     Vega immediately tipped her hand that she filed the Petitions as a litigation tactic by filing a *Suggestion of Bankruptcy* on April 17, 2025 in the district court alleging "that this action

---

[1] Even if the Alleged Debtors had not filed a supersedeas bond, Vega still would not have been permitted to execute a writ on her judgment. Writs of execution will not be issued until 30 days following denial of any timely filed post-judgment motions. The district court denied the Alleged Debtors' Motion for New Trial on April 9, 2025. Thus, the earliest Vega could have obtained a writ of execution would have been May 9, 2025, 22 days after Vega filed the involuntary bankruptcy petitions. *See* TEX. R. CIV. P. 627. But even Texas Rule of Civil Procedure 627 applies only "if no supersedeas bond" has been filed. *See id.*

[2] Post judgment discovery is only appropriate to aid in the enforcement of a judgment that has not been suspended by a supersedeas bond, unless the discovery solely relates to net worth. TEX. R. CIV. P. 621a.

has been stayed pursuant to 11 U.S.C. § 362(a)." A copy of the Suggestion of Bankruptcy is attached hereto as **Exhibit 14**.

32. On May 1, 2025, the Alleged Debtors filed an *Amended Notice of Appeal* (the "**Amended Notice of Appeal**") to reflect appeal from the 408th Judicial District court of Bexar County, Texas and noting that, contemporaneously with the filing of its Amended Notice of Appeal, the Alleged Debtors had filed a Notice of Bankruptcy with the Court of Appeals pursuant to Texas Rule of Appellate Procedure 8.1. A copy of the Amended Notice of Appeal is attached hereto as **Exhibit 15**.

33. The two-party dispute described herein reflects active litigation as to both the underlying theory of liability and any amount of damages. These issues were properly preserved for appeal, of which the Alleged Debtors provided timely notice.

34. Despite receiving all protections a judgment creditor is entitled to under Texas law, Vega has impermissibly interjected federal law into these hotly contested state law issues. Accordingly, the Alleged Debtors respectfully request that this Court enter Summary Judgment dismissing the involuntary Petitions for the reasons stated herein.

### RELIEF REQUESTED AND BASES THERFOR

**A.     Legal Standard: Summary Judgment**

35. A "defense or objection to [an involuntary] petition must be presented as prescribed by Federal Rule of Civil Procedure 12." FED. R. BANKR. P. 1011. Courts have recognized that while a Rule 12 motion is permitted to challenge an involuntary petition, "its benefits in this situation are limited." *In re Haymond*, 633 B.R. 520, 531 (Bankr. S.D. Tex. 2021) (citing *In re Gutierrez*, No. 20-50129-NPO, 2020 Bankr. LEXIS 1304, at *7 (Bankr. S.D. Miss. May 15, 2020)). Such courts reason that relief pursuant to a Rule 12 motion is limited in the context

of an involuntary petition because petitioning creditors can meet the pleading standard set forth in Federal Rule of Civil Procedure 8(a)(2) solely by "checking the boxes" on the official petition form. *Id.* at 533-34 (citing case law and the Federal Rule of Bankruptcy Procedure 9009(a)); FED. R. BANKR. P. 9009(a); FED. R. CIV. P. 8(a)(2).

36.     Here, the Alleged Debtors do not concede that Vega has met her burden to state a claim upon which relief can be granted via a pleading that consists of more than a "formulaic recitation of the elements of a cause of action" merely by filing a form and checking a box. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (stating that Rule 12 does not require a court to "accept conclusory allegations, unwarranted deductions, or legal conclusions."). However, given the case law stating that the "superior approach" in the context of an involuntary petition is to file an answer and seek summary judgment, the Alleged Debtors herein have adopted such an approach. *In re Haymond*, 633 B.R. at 531. Immediately prior to the filing of this Motion, the Alleged Debtors have each filed an answer compliant with Federal Rule of Bankruptcy Procedure 1003(b).

37.     Pursuant to Federal Rule of Civil Procedure 56(c), made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056(g), summary judgment should be entered for the moving party when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). Material facts are those that will affect the outcome of the lawsuit. *Anderson*, 477 U.S. at 248. Issues of material fact are "genuine" only if they require resolution by a trier of fact. *Taita*, 246 F.3d at 385; *see also Calpetco 1981 v. Marshall Exploration, Inc.*, 989

F.2d 1408, 1413 (5th Cir. 1993) (holding that "mere disagreement" between parties is not enough to create a genuine dispute).

38.     Once the moving party shows the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to designate specific facts establishing an issue for trial. *Celotex Corp.*, 477 U.S. at 324; *Taita Chem. Co.*, 246 F.3d at 385. A genuine dispute requires more than some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Specifically, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks deleted). Summary judgment is not a disfavored procedural shortcut, but rather is designed to secure the just, speedy, and inexpensive determination of every action.  *Celotex Corp.*, 477 U.S. at 327.

39.     All the pertinent facts in this matter are undisputed and, as described herein, compel relief for the Alleged Debtors as a matter of law via dismissal of the Petitions.

**B.     The Alleged Debtors Are Entitled to Judgment as a Matter of Law Regarding Its Eligibility to be a Debtor Under Bankruptcy Code section 303 – Bona Fide Dispute**

40.     As the movant for summary judgment, the Alleged Debtors bear the initial burden to establish the lack of any genuine issue of material fact as to whether Vega has failed to establish one or more of the elements under Bankruptcy Code section 303. *See* 11 U.S.C. § 303. At trial on this matter, Vega bears the burden of proof as to such elements under section 303. Therefore, this Court must grant summary judgment in favor of the Alleged Debtors, and dismiss the Petitions, if the Alleged Debtors demonstrate that Vega has not provided (and under these facts cannot provide) evidence supporting an essential element of section 303. *In re Haymond*, 633 B.R. at 535

11

(describing the relevant burdens for summary judgment in the context of an involuntary bankruptcy case); *see also In re Seven Three Drilling Co., L.L.C.*, No. 21-10219, 2021 Bankr. LEXIS 2072, at *12 (Bankr. E.D. La. Aug. 4, 2021). In addition, Federal Rule of Civil Procedure 56(c)(3) permits a court to "consider other materials in the record." FED. R. CIV. P. 56(c)(3). As such, it is appropriate for the Court to consider the exhibits attached hereto demonstrating that the material facts are uncontested and that Vega is incapable of bearing her burden.

41.     Bankruptcy Code section 303(h)(1) requires the petitioning creditor bear the burden of showing that "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute." 11 U.S.C. § 303(h)(1) (emphasis added). The Bankruptcy Code does not define the term "bona fide dispute," and therefore the term has been developed by case law. The Fifth Circuit has adopted the objective standard, which analyzes whether there is an objective factual or legal dispute as the validity of the debt. *Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 213 (5th Cir. 1993); *see also In re Ebackpack*, 605 B.R. 126, 128 (Bankr. N.D. Tex. 2019) ("[t]he burden first falls on the Petitioners to make a prima facie case that there is no bona fide dispute as to their claims, in order to establish standing to bring an involuntary petition.").

42.     Here, Vega cannot meet her burden. As set forth in the Summary Judgment facts above, Vega's status as a creditor relates entirely to the Lawsuit. It is beyond dispute that the Lawsuit was heavily contested at every step and that it remains contested. That is, the Alleged Debtors have denied all liability in relation to the criminal behavior of Vega's ex-boyfriend. Moreover, the fact that a judgment was ultimately entered in favor of Vega does not establish a lack of bona fide dispute. It is also an undisputed fact that the Alleged Debtors timely filed a notice of appeal and timely filed a supersedeas bond following entry of the Judgment. As noted above,

12

pursuant to Texas Rule of Appellate Procedure 24.1, the filing of such bond stayed the Judgment by suspending any enforcement by Vega. TEX. R. APP. P. 24.1.

43. Vega's stayed Judgment does not meet the eligibility requirements under Bankruptcy Code section 303(h)(1) because such a judgment constates a bona fide dispute. *See Fustolo v. 50 Thomas Patten Drive, LLC*, 816 F.3d 1, 7 (1st Cir. 2016) (discussing the "*Drexler* rule" whereby bankruptcy courts respect underlying judgments as not being subject to a bona fide dispute for the purpose of Bankruptcy Code section 303(h)(1), but limiting such considerations to unstayed judgments because "those judgments actually entitle a creditor to access the debtor's assets."); *see also Marciano v. Chapnick (In re Marciano)*, 708 F.3d 1123, 1124-25 (9th Cir. 2013) (upholding a decision that there was no bona fide dispute in relation to a judgment specifically because the debtor failed to post a bond). Here, under applicable state law, Vega has no ability to access the Alleged Debtors' assets—or any insurance policy proceeds—because the Alleged Debtors timely posted a supersedeas bond, staying the Judgment.

44. In addition, even if the Judgment was not stayed, that fact alone would not permit Vega to establish a lack of bona fide dispute. *See In re Henry S. Miller Commer., LLC*, 418 B.R. 912, 921-22 (Bankr. N.D. Tex. 2009) (disagreeing with case law holding that an unstayed judgment establishes no bona fide dispute on the grounds that taking such a position is "arguably inconsistent with the literal wording" of section 303(h)(1)."); *see also In re Briggs*, Nos. 07-34534, 07-34533, 2008 Bankr. LEXIS 4354, at *1 (Bankr. N.D. Tex. Jan. 18, 2008) (finding a bona fide dispute where there was an unstayed judgment in part because only a single creditor was making demand for payment). Notably, the Fifth Circuit has not issued a binding decision on this issue. *Id.* at 922 n.2 (pointing out that an unpublished decision cited by some courts—*In re Norris*, 114 F.3d 1182 (5th Cir. 1997)—has no precedential value and further that it had a unique fact pattern

13

making it not inconsistent with the court's holding regarding unstayed judgments); *but see In re Bates*, 545 B.R. 183, 187 (Bankr. W.D. Tex. 2016).

45. Vega's entire argument for eligibility under Bankruptcy Code section 303(h)(1) rests on the Judgment not being a bona fide dispute between Vega and the Alleged Debtors. The facts, including the party's behavior in the underlying litigation before and after entry of the Judgment, amply demonstrate otherwise. Moreover, Vega cannot rely on case law to defeat the bona fide nature of the dispute—whether such case law is called the "*Drexler* rule" or otherwise— because the Judgment is stayed, and Vega has no ability to access the Alleged Debtors' assets.

46. For these reasons, the Court should find that there is no material dispute of fact and should rule in the Alleged Debtors' favor as a matter of law that Vega has not met her burden under Bankruptcy Code section 303(h)(1).

**C. The Alleged Debtors Are Entitled to Judgment as a Matter of Law Regarding Its Eligibility to be a Debtor Under Bankruptcy Code section 303 – Not Paying Debts as Such Debts Come Due**

47. The summary judgment evidence further establishes that Vega cannot meet her burden of showing that the Alleged Debtors were not paying their debts as such debts come due, as required under Bankruptcy Code section 303(h)(1). As to Diamond, Vega was its only creditor as of filing the Petitions and Diamond had ceased all operations more than two years prior to that time. While Diamond continued to defend itself in the Litigation, Vega has no basis for alleging that Diamond was not paying debts as they came due. The undisputed fact is that there were no debts. Moreover, when the Judgment was entered the Alleged Debtors both timely and responsibly posted the supersedeas bond, thus providing Vega with every protection she was entitled to under the law. On this record, Vega cannot show a failure to pay any debt.

14

48.     As to Marbach, as of the filing of the Petitions, there was a suit pending against Marbach by another creditor. However, the litigation was subsequently non-suited by the plaintiff, and as of the filing of this Brief Vega is Marbach's sole creditor. Again, the facts cannot sustain a claim that Marbach failed to pay any debt. It defended itself against litigation and, like Diamond, posted a bond that provided Vega with the protection to which she was entitled.

49.     For these reasons the Court should find that there is no material dispute of fact and should rule in the Alleged Debtors' favor as a matter of law that Vega has not met her burden under Bankruptcy Code section 303(h)(1).

**D.     The Alleged Debtors Are Entitled to Judgment as a Matter of Law with Respect to Vega's Bad Faith**

50.     The Fifth Circuit has recognized that Congress crafted Bankruptcy Code section 303 to provide limited circumstances for involuntary bankruptcy filings, given the fact that involuntary bankruptcy is a severe remedy. *See Credit Union Liquidating Servs., L.L.C. v. Green Hills Dev. Co. (In re Green Hills Dev. Co.)*, 741 F.3d 651, 655 (5th Cir. 2014). In addition, courts have made it clear that a petition for involuntary bankruptcy should not be used as a litigation strategy, whether that is resolving a mere two-party dispute or attempting to inject federal law into a dispute on purely state law issues. *See, e.g., In re Privada, Inc.*, No. 07-10940 FRM, 2008 Bankr. LEXIS 2717, at *8 (Bankr. W.D. Tex. Oct. 22, 2008) (citing *In re First Financial Enterprises, Inc.*, 99 B.R. 751, 754 (Bankr. W.D. Tex. 1989)).

51.     Misuse of the Bankruptcy Code's limited involuntary bankruptcy provisions may constitute bad faith. A bankruptcy court may award damages following dismissal against "any petitioner that filed the petition in bad faith." 11 U.S.C. § 303(i)(2). Courts have relied upon this to find a requirement under section 303 that involuntary petitions must be filed in good faith. *In re*

15

*Seven Three Drilling Co., L.L.C.*, 2021 Bankr. LEXIS 2072, at \*17. The Bankruptcy Code does not define "good faith" for these purposes and courts have taken a "totality of the circumstances" approach in making the determination. *Id.* at \*19 (collecting cases). Courts consider several factors, including whether the matter is a two-party dispute, whether it is a litigation tactic, and whether the petitioning creditor's actions run "counter to the spirit of collective creditor action that should animate an involuntary filing." *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 334 (3d Cir. 2015); *see also In re Bates*, 545 B.R. at 192; *In re In re Privada, Inc.*, 2008 Bankr. LEXIS 2717, at \*1.

52.     On this record, the Court should rule that bad faith has been demonstrated as a matter of law. Unlike the burden of proof related to bona fide disputes—which falls squarely on Vega—the Alleged Debtors bear the burden of proof to show that Vega filed the Petitions in bad faith. *In re Synergistic Techs., Inc.*, No. 07-31733-SGJ-7, 2007 Bankr. LEXIS 2060, at \*16 (Bankr. N.D. Tex. Aug. 6, 2007).

53.     There is nothing collective about Vega's strategy to put the Alleged Debtors into bankruptcy. The Petitions benefit no party other than Vega. The Alleged Debtors posted a bond and were proceeding with an appeal of the Judgment. Moreover, there is no evidence that the Alleged Debtors took any action that was prejudicial to Vega's recovery, such as would be the case, for example, with alleged debtor malfeasance or a wasting asset. Not a single factor considered by courts in analyzing good faith weighs in favor of Vega. Instead, the circumstances all point to Vega improperly using section 303 as an attempt to thwart the Alleged Debtors' right to appeal the Judgment.

16

54. For these reasons, the Court should find that the Alleged Debtors have met their burden and should rule as a matter of law that the Petitions were filed in bad faith. The Petitions should therefore be dismissed.

**E.    The Alleged Debtors Are Entitled to Judgment as a Matter of Law Regarding Costs and Fees Under Bankruptcy Code section 303(i)**

55. Bankruptcy Code section 303(i)(1) permits a court to enter a judgment in favor of an alleged debtor for costs or reasonable attorney's fees where a petition is dismissed by the court for any reason. *See In re Sims*, 994 F.2d at 213; 11 U.S.C. § 303(i)(1). In fact, there is a presumption that fees should be awarded against an unsuccessful petitioning creditor, with the unsuccessful petitioner bearing the burden of rebutting the presumption. *In re Clean Fuels Techs. II, LLC*, 544 B.R. 591, 602 (Bankr. W.D. Tex. 2016). In making such determination courts consider several factors including (1) the merits of the involuntary petition; (2) the role of any improper conduct on behalf of the alleged debtor; (3) the reasonableness of actions taken by the petitioning creditor; and (4) the motivation and objectives behind the involuntary petition. *Id.*

56. As set forth above, the Petitions should be dismissed as a matter of law both because the amounts owed to Vega are subject to bona fide dispute and because the Petitions were filed in bad faith. As a matter of law, Vega is incapable of rebutting the presumption because all four factors weigh in favor of the Alleged Debtors. While the Alleged Debtors have not engaged in any improper conduct in the course of simply seeking to appeal the Judgment, Vega filed the Petitions for the sole purpose of disrupting the Alleged Debtors' appellate rights. As such, following dismissal of the Petitions, the Court should set a hearing on the amount of costs and attorney's fees payable to the Alleged Debtors.

17

57.     In addition, Bankruptcy Code section 303(i)(2) allows a court to assess and award damages when a petition is dismissed for being filed in bad faith, as well as punitive damages. 11 U.S.C. § 303(i)(2). Given the fact that the Alleged Debtors have met their burden of showing that the Petitions were filed in bad faith, the Court should also take up the matter of damages to be awarded to the Alleged Debtors. The Alleged Debtors reserve all rights with respect to proving damages and further seeking punitive damages to discourage the type of litigation gamesmanship engaged in by Vega in this case.

**F.      Absent Dismissal Under Bankruptcy Code section 303, the Court Should Abstain Under Bankruptcy Code section 305**

58.     Abstention, as set forth in Bankruptcy Code section 305, provides a legally independent, and valid, route for the Court to dismiss the Petitions. A court may dismiss a case at any time if "the interests of creditors and the debtor would be better served by such dismissal . . ." 11 U.S.C. § 305(a)(1). The Alleged Debtors, as the moving parties, bear the burden of proof on this issue and must show that the interests of all parties are better served by the Court's voluntary decline of jurisdiction over the case. *In re Sherwood Enters., Inc.*, 112 B.R. 165, 167 (Bankr. N.D. Tex. 2018). Courts consider many factors in determining whether to abstain, including "whether another forum in available to protect the interests of both parties or there is already a pending proceeding in state court" and "whether federal proceedings are necessary to reach a just and equitable solution." *In re Acis Capital Mgmt., L.P.*, 584 B.R. 115, 145 (Bankr. N.D. Tex. 2018).

59.     It also bears mentioning, once again, that Vega is fully aware of various levels of insurance coverage related to her claim which would ultimately provide full coverage to Vega's entire if Vega's claim were to survive through the conclusion of the appellate process. This further

18

weighs in favor of the fact that federal proceedings are not necessary to reach a just and equitable solution.

60.     The additional bases for abstention in this matter are readily apparent. The Alleged Debtors have appealed the Judgment and have provided every protection to which Vega is entitled under the law by posting a supersedeas bond. This is a two-party dispute that, following dismissal or abstention, will proceed forward to its conclusion in the Texas courts of appeals. There are no other creditors, outstanding claims, or liabilities against either of the Alleged Debtors and no valid reason for invoking bankruptcy jurisdiction which, ultimately, is designed to be a collective action for the mutual benefit of a body of creditors. *See In re Acis Capital Mgmt.* 584 B.R. at 146-47. Given the fact that the Petitions were filed as nothing more than a litigation tactic—that is, a tactical sword wielded by an adverse party—the Court should abstain and allow the matter to proceed forward in state court. *See In re Landmark Distribs., Inc.*, 189 B.R. 290, 306 (Bankr. D. N.J. 1995) (recognizing that the Bankruptcy Code "was created to act as a shield for debtors, rather than a sword for creditors.").

## RESERVATION OF RIGHTS

61.     The Alleged Debtors are continuing to review the facts and circumstances giving rise to the Petitions. The Alleged Debtors reserve the right to raise additional objections to the Petitions, or to seek that petitioning creditor Vega post a bond pursuant to Bankruptcy Code section 303(e), at the appropriate time.

## CONCLUSION

62.     For the foregoing reasons, the Alleged Debtors respectfully request that the Court grant this Motion, dismiss the Petitions, and grant the Alleged Debtors such other relief to which they are justly entitled.

WHEREFORE, the Alleged Debtors request that this Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: May 12, 2025

Respectfully submitted,

KANE RUSSELL COLEMAN & LOGAN, P.C.

By: */s/   Abigail Rogers*
Jason Binford
Texas State Bar No. 24045499
Abigail Rogers
Texas State Bar No. 24144104
401 Congress Ave., Ste. 2100
Austin, Texas 78701
Telephone: (512) 487-6650
Email: jbinford@krcl.com
        arogers@krcl.com

***Counsel for Marbach Associates, LLC and Diamond Apartment Management, Inc.***

20

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 12, 2025, she caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Western District of Texas and via email on the parties listed below.

/s/ Abigail Rogers
Abigail Rogers

**Petitioning Creditor's Counsel**
Husch Blackwell
Jameson J. Watts
Tom Zavala
111 Congress Avenue, Suite 1400
Austin, TX 78701
*jameson.watts@huschblackwell.com*
*tom.zavala@huschblackwell.com*

21