

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 30, 2025**

_____
**MICHAEL M. PARKER**
**UNITED STATES BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MARBACH ASSOCIATES, LLC, | § | CASE NO. 25-50815-MMP |
| DIAMOND MANAGEMENT, INC., | § | CASE NO. 25-50816-MMP |
| | § | |
| ALLEGED DEBTORS. | § | JOINTLY ADMINISTERED |
| | § | CHAPTER 7 |

OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

The Court heard the Alleged Debtors' *Amended Motion for Summary Judgment* (Case

No. 25-50815, ECF No. 29)[1] challenging the propriety of involuntary petitions brought against the

Alleged Debtors and determined the *Amended Motion* should be denied. Argument focused on

four issues: (i) whether Julie Vega ("**Vega**") is eligible to be a petitioning creditor under § 303(b);[2]

(ii) whether the Alleged Debtors were paying their undisputed debts as they became due consistent

---

[1] The above-captioned bankruptcy cases are being jointly administered under Case No. 25-50815. ECF No. 18. So, all
ECF citations are to the docket in Case No. 25-50815, unless otherwise noted.
[2] All statutory citations and references are to title 11 of the U.S. Code, unless otherwise noted.

with § 303(h); (iii) whether the Court should abstain under § 305 and effectively dismiss the involuntary petitions; and (iv) whether the Court should dismiss the above-captioned cases because of Vega's alleged bad faith.

Because a stayed appeal does not by itself create a bona fide dispute and because the Alleged Debtors have not presented objective evidence that their judgment debt owed to Vega is subject to a factual or legal dispute, Vega meets the § 303(b) requirement to be a petitioning creditor. Because a fact question remains as to whether the Alleged Debtors were paying their undisputed debts as they became due, § 303(h) is satisfied at this stage. Because the creditors' best interests are served by not abstaining and requiring the Alleged Debtors to remain in bankruptcy, the Court will retain these cases. And because the Alleged Debtors have not met their burden of proving Vega's bad faith, the Court will not dismiss the above-captioned cases. Therefore, the Court will deny the Alleged Debtors' *Amended Motion* and hold a docket call on when to set a trial date to determine whether the Court should enter an order for relief in each of the above-captioned bankruptcy cases.

## II.    JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b). Venue is proper under 28 U.S.C. § 1408 and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This Opinion and Order serves as this Court's findings of fact and conclusions of law under Federal Rules of Bankruptcy Procedure 7052 and 9014.

## III.    BACKGROUND

Vega filed involuntary petitions creating the above-captioned bankruptcy cases against Marbach Associates, LLC ("**Marbach**") and Diamond Management, Inc. ("**Diamond**"). ECF No. 1. The Court granted the Alleged Debtors' *Emergency Motion for Joint Administration of Cases* (ECF No. 7). ECF No. 18. About a month later, the Alleged Debtors filed the *Amended*

2

*Motion for Summary Judgment* (ECF No. 29) and accompanying *Brief in Support* (ECF No. 30) seeking to establish that Vega's involuntary petitions were improperly filed.

Prepetition, Marbach owned and Diamond operated the Polo Club apartments—a 408-unit apartment complex in San Antonio ("**Polo Club Complex**"). ECF No. 30 ¶ 6. Marbach sold (or transferred to Marbach's principals to sell) the Polo Club Complex for $65 million on March 30, 2022. Vega's Ex. 3. This sale appears to have netted Marbach or Marbach's principals $38 million. Vega's Ex. 6, pp. 56:13–57:11. No evidence was presented on Diamond's assets or assets that used to be owned by Diamond.

The evidence suggests, and the Court finds, that as of the petition date Marbach had at least four potential creditors: Vega, JMI and Associates ("**JMI**"), Global Disaster Recovery, LLC ("**GDR**"), and the Texas Comptroller. ECF Nos. 1, 6; PoC #1; Vega's Ex. 18. The evidence suggests, and the Court finds, that as of the petition date, Diamond had at least three potential creditors: Vega, JMI, and the IRS. Case No. 25-50816, ECF Nos. 1, 6; Vega's Ex. 18; Vega's Ex. 21, pp. 25:13–25, 28:18–30:9.

Pre-petition, Vega and the Alleged Debtors were extensively involved in heavily contested state court litigation. Before a judgment was entered, the Alleged Debtors sought writs of mandamus contesting a spoliation instruction from the Texas Fourth Court of Appeals (Alleged Debtors' Ex. 8) and the Supreme Court of Texas (Alleged Debtors' Ex. 7), which were ultimately denied. Vega's Exs. 12, 13. The lawsuit was reduced to a judgment and Vega was awarded more than $25 million in damages against Marbach and Diamond. Alleged Debtors' Ex. 11, pp. 1–3 ("**Judgment**"). After losing at trial, the Alleged Debtors sought reversal of the Judgment by filing various post-judgment motions (Alleged Debtors' Exs. 12, 13), before appealing the Judgment to the Fourth Court of Appeals (Alleged Debtors' Ex. 18) where it now sits, paused by these

3

bankruptcy cases. By paying a small sum commensurate with the asserted value of the assets the Alleged Debtors claimed to have after the sale of the Polo Club Complex (which value did not include the value of any fraudulent transfer actions), the Alleged Debtors put up a small supersedeas bond (Alleged Debtors' Ex. 15) to stay the enforceability of the Judgment through Texas Rule of Appellate Procedure 24.1.

Pre-petition, the Alleged Debtors may have owed JMI money for repairs made to the Polo Club Complex related to damage caused by Winter Storm Uri. Vega's Ex. 18, pp. 23–26 (showing a federal court lawsuit filed by the Alleged Debtors and other entities against their insurance provider to use insurance proceeds to pay JMI repair costs).

Marbach admits that as of the petition date it owed a debt to another creditor but says that debt was disputed in the form of a state court lawsuit. ECF No. 30 ¶ 48. Marbach, however, did not submit any evidence on this point beyond what the Court already has in its record. ECF No. 6, Ex. 1 (attaching a copy of a non-suit entered in a state-court case with GDR as plaintiff and Marbach as a defendant after the petition was filed). Additionally, as of the petition date Marbach owed the Texas Comptroller $1,693.55 for franchise taxes. PoC #1.

Diamond has said that as of the petition date it had no debts or net worth. Alleged Debtors' Ex. 17 ¶ 5. Diamond's president stated in an affidavit that Diamond ceased operations in June 2022 and has had no income since about that time. *Id.* Diamond's president also stated in a deposition that Diamond filed taxes but she did not know when the last tax return was filed or whether Diamond paid taxes for 2022. Vega's Ex. 21, pp. 25:13–25, 28:18–30:9.

IV. **ANALYSIS**
    a. **MOTION FOR SUMMARY JUDGMENT ON SECTION 303 ISSUES**
        1. **MOTION FOR SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. ***Alabama v. North Carolina***, 560 U.S. 330, 344

(2010) (quoting Rule 56(c) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A summary judgment movant

> bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. . . . However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994).

Therefore, although Vega bears the ultimate burden at trial of many of these matters, it is the Alleged Debtors' burden, as the movant, to prove no evidence exists that could allow Vega to meet her burden at trial. FED. R. CIV. P. 56(a); *Lindsey*, 16 F.3d at 618. All Vega must show at this stage is that there is some evidence, even if ambiguous, that could allow her to meet her burden at trial. *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *see also Franks Inv. Co. v. Union Pac. R.R. Co.*, 772 F.3d 1037, 1040 (5th Cir. 2014) ("The panel must resolve ambiguities in favor of the non-moving party."). *If* the Alleged Debtors meet their burden and Vega cannot counter with some evidence, summary judgment is proper.

## 2. THE PARTIES' ARGUMENTS

The Alleged Debtors argue that (1) Vega has not met her burden to prove she is a petitioning creditor under § 303(b) because the debt she holds is subject to a bona fide dispute; and (2) the involuntary cases are improper under § 303(h) because Vega has not proved the Alleged Debtors were not paying their debts as they became due. To support their contention of a bona fide dispute, the Alleged Debtors point to their pending appeal of the Judgment, which they procedurally stayed by putting up a supersedeas bond.

Vega responds that an appeal, even on a stayed judgment, does not by itself show a bona fide dispute. Vega contends she is eligible to be a petitioning creditor because the Judgment is not

subject to bona fide dispute and because it and the Alleged Debtors' other debts were not being paid as they became due as of the petition date.

### 3.   SECTION 303 GENERALLY

Section 303 permits creditors to force a debtor into a bankruptcy case and lays out the rules and eligibility requirements for involuntary petitions. ***Credit Union Liquidity Servs., L.L.C. v. Green Hills Dev. Co. (In re Green Hills Dev. Co.)***, 741 F.3d 651, 655 (5th Cir. 2014). Here, the parties contest satisfaction of § 303(b) and (h).

For a chapter 7 involuntary filing against a non-farmer, for-profit debtor, § 303(b) requires:

(1)    at least three creditors holding an aggregated $18,600 in qualifying claims[3] file a petition; or

(2)    if fewer than 12 creditors of qualifying claims exist, any creditor holding a qualifying claim files a petition.

§ 303(b); ***Green Hills Dev.***, 741 F.3d at 655; ***In re eBackpack, LLC***, 605 B.R. 126, 132 (Bankr. N.D. Tex. 2019). Vega proceeded under the second option when she filed her involuntary petitions against the Alleged Debtors, making the actual number of creditors of each Alleged Debtor beyond Vega less important under section 303(b). But it is not enough for a creditor to just hold qualifying claims to force a debtor into bankruptcy. Section 303(h) also requires that a debtor must not be paying its undisputed debts as they become due. § 303(h).

### A.   BONA FIDE DISPUTE AS TO VEGA'S CLAIM

In ***Subway Equip. Leasing Corp. v. Sims (Matter of Sims)***, 994 F.2d 210, 221 (5th Cir. 1993), the Fifth Circuit adopted an objective test to determine whether a claim is subject to bona fide dispute for § 303 purposes. "Under that objective standard, the bankruptcy court must

---

[3] Qualifying claims are non-contingent unsecured (or under-secured) claims not subject to bona fide dispute. § 303(b); ***Green Hills Dev.***, 741 F.3d at 655.

determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt." ***Id.*** (internal quotations omitted).

The Fifth Circuit applies a burden-shifting framework where the petitioning creditor bears the initial burden to establish a prima facie case that no bona fide dispute exists, then the debtor bears the burden of rebutting that prima facie case. ***Green Hills Dev.***, 741 F.3d at 658; ***In re Griffin***, Case No. 23-32658, 2023 WL 6979047, at *3 (Bankr. S.D. Tex. Oct. 20, 2023).[4] A debtor's words and actions reflecting a subjective belief that a bona fide dispute exists is not sufficient. ***Green Hills Dev.***, 741 F.3d at 658. Instead, if a creditor establishes a prima facie case, a debtor must point the court to legal or factual issues sufficient to show a dispute objectively exists. ***Sims***, 994 F.2d at 221.

The Fifth Circuit in ***Sims*** recognized that:

> The Court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute. This does not mean that the bankruptcy court is totally prohibited from addressing the legal merits of the alleged dispute; indeed, the bankruptcy court may be required to conduct a limited analysis in order to ascertain whether an objective legal basis for the dispute exists.

***Id.*** (quoting ***Rimell v. Mark Twain Bank (In re Rimell)***, 946 F.2d 1363, 1365 (8th Cir. 1991)). The Alleged Debtors assert Vega attempts to prosecute the appeal before the bankruptcy court in her *Response* (ECF No. 55 ¶¶ 19–21). Although this is not the correct forum for a full-blown appeal of the Judgment, reviewing (without ruling on the propriety of) certain aspects of an appeal is, to

---

[4] The Alleged Debtors point to ***In re Haymond***, 633 B.R. 520, 535 (Bankr. S.D. Tex. 2021) to support their contention that Vega, as the petitioning creditor, bears the ultimate burden of proving that a debt is not subject to bona fide dispute. Not only is this position inconsistent with Fifth Circuit law, *see ****Green Hills Dev.***, 741 F.3d at 658, the vast majority of bankruptcy judges in the Fifth Circuit disagree, including ***Haymond***'s author, as can be seen from his latest opinion on the subject. ***Griffin***, 2023 WL 6979047, at *3; *see also ****In re ArtiusID, Inc.***, 673 B.R. 340, 361 (Bankr. W.D. Tex. 2024); ***In re Seven Three Distilling Co.***, Case No. 21-10219, 2021 WL 2843849, at *4 (Bankr. E.D. La. July 6, 2021); ***In re Banner Res. LLC***, Case No. 21-60016, 2021 WL 2189085, at *2 (Bankr. N.D. Tex. May 28, 2021); ***In re Hunt***, Case No. 18-10802, 2018 WL 3586712, at *4 (Bankr. E.D. La. July 24, 2018); ***In re Hassell 2012 Joint Venture***, Case No. 15-30781, 2016 WL 5369475, at *5 (Bankr. S.D. Tex. Sept. 23, 2016); ***In re CorrLine Int'l, LLC***, 516 B.R. 106, 146 (Bankr. S.D. Tex. 2014); ***In re Edwards***, 501 B.R. 666, 680–81 (Bankr. N.D. Tex. 2013); ***In re Henry S. Miller Comm., LLC***, 418 B.R. 912, 921 (Bankr. N.D. Tex. 2009).

an extent, exactly what the Fifth Circuit instructs the Court to do. *Green Hills Dev.*, 741 F.3d at 659 ("Bankruptcy courts routinely consider the existence and character of pending but unresolved litigation as evidence of a bona fide dispute.").

When faced with claims stuck in multi-year state court litigation in *eBackpack*, Judge Jernigan reviewed the pleadings, orders, and discovery from the state court case and concluded the claims, *which had not been reduced to a judgment*, were subject to bona fide dispute because the issues raised by the parties were unresolved. *eBackpack*, 605 B.R. at 135. In *Henry S. Miller Commercial*, the petitioning creditors' claims had been reduced to an enforceable judgment, so Judge Jernigan reviewed appellate briefs to determine whether an *unstayed* judgment was subject to bona fide dispute. *Henry S. Miller Comm.*, 418 B.R. at 921.

Here, the Alleged Debtors have an appeal of a stayed judgment. It is not the Court's job to predict the Alleged Debtors' chance of success on appeal. Rather, the Court's job is to review evidence to determine whether there is any legal or factual basis showing a bona fide dispute. *Norris v. Johnson (In re Norris)*, Case No. 96-30146, 1997 WL 256808, at *4 (5th Cir. Apr. 11, 1997); *Henry S. Miller Comm.*, 418 B.R. at 921.

A judgment shows the resolution of a claim and is strong evidence that no bona fide dispute exists. *Norris*, 1997 WL 256808, at *4; *see also Schlossberg v. Byrd (In re Byrd)*, 357 F.3d 433, 437–38 (4th Cir. 2004) ("Indeed it will be the unusual case in which a bona fide dispute exists in the face of claims reduced to state court judgments."). Thus, Vega clears this low bar and establishes a prima facie case. *See eBackpack*, 605 B.R. at 134 ("This initial burden on the [petitioning creditor] is a low bar."); *Edwards*, 501 B.R. at 681 ("By introducing the Final Judgment into evidence, this Court concludes that the [petitioning creditors] have met their burden of proof on this point.").

Still, a judgment only creates a presumption of the lack of a bona fide dispute; a presumption that can be rebutted with evidence showing factual or legal contentions with the judgment. *Byrd*, 357 F.3d at 438; *Henry S. Miller Comm.*, 418 B.R. at 921. The Alleged Debtors' *Amended Motion* relies entirely on the fact that the Alleged Debtors stayed the Judgment. ECF No. 30 ¶¶ 42–45. They say that the stay on collectability of the Judgment makes the Judgment unenforceable and therefore subject to bona fide dispute. *Id.*

An unstayed judgment is not subject to bona fide dispute. *Norris*, 1997 WL 256808, at *4. An exception applies when subsequent events call into question the validity, enforceability, or accuracy of a judgment. *Henry S. Miller Comm.*, 418 B.R. at 921; *see Hunt*, 2018 WL 3586712, at *4 (finding a grant of a new trial suggests the existence of a bona fide dispute); *Byrd*, 357 F.3d at 438 ("Such judgments do not guarantee the lack of a bona fide dispute, however, especially absent rulings by Maryland appellate courts or in the face of contrary rulings by other Maryland trial courts."); *In re Prisuta*, 121 B.R. 474, 476 (Bankr. W.D. Pa. 1990) ("It is possible, where circumstances so dictate, for there to be a bona fide dispute even when the claim arises from an unstayed, unappealed judgment of record. Such a determination depends on the specific facts of a case."). A stay of a judgment postpones the *collectability* of a damages judgment and *enforceability* of injunctive relief but does not challenge the judgment's underlying validity and accuracy or address the underlying merits of the judgment itself.

Neither party provided the Court case law considering whether a stayed judgment created a bona fide dispute as to the underlying merits of that judgment, and the Court has found only a single, older case out of the Eastern District of Pennsylvania opining on the issue. *In re Raymark Indus., Inc.*, 99 B.R. 298 (Bankr. E.D. Pa. 1989). In *Raymark Indus.*, Judge Twardowski, without explanation or citation, found a judgment subject to bona fide dispute where the alleged debtor

stayed that judgment. *Id.* at 300. Like the case here, the stay in ***Raymark Indus.*** existed by operation of procedural rules. *Id.*; Alleged Debtors' Ex. 15; TEX. R. APP. P. 24.1. The Court respectfully disagrees with Judge Twardowski's bare conclusion. The stay of a judgment does not end the inquiry. Instead, the Court must examine the nature of the stay to determine whether the type of stay objectively supports the existence of a bona fide dispute.

A stay may or may not be evidence of a bona fide dispute. Procedural stays (obtainable without contest or hearing) lend less weight to a bona fide dispute argument than stays granted by a judge after hearing evidence or legal argument. If a judge stays her own judgment, or if an appellate court grants a stay or affirms a stay of a judgment, *those actions* constitute evidence of a bona fide dispute. *See **Hunt***, 2018 WL 3586712, at *4 (suggesting granting a new trial shows bona fide dispute). A procedural stay that requires no judicial determination of the likelihood of success on the merits or the irreparability of harm, and no weighing of competing interests, but only exists because a debtor pays a sum of money, has little, if any, bearing on whether a judgment is *objectively* subject to bona fide dispute. That the Alleged Debtors have paid for a supersedeas bond to stay the collectability and enforceability of the Judgment speaks only to their subjective belief that the Judgment is disputed (which is insufficient under the Fifth Circuit's standard) and not to the belief that the Judgment is objectively subject to bona fide dispute.[5] ***Sims***, 994 F.2d at 221; ***In re Norris***, 183 B.R. 437, 458–59 (Bankr. W.D. La. 1995), *aff'd*, ***Norris***, 1997 WL 256808.

Like the petitioning creditors in ***Henry S. Miller Commercial***: the Alleged Debtors conflate the concepts of enforceability and bona fide dispute. ***Henry S. Miller Comm.***, 418 B.R. at 921. Just because Vega at present cannot enforce the Judgment does not make it subject to bona fide

---

[5] Much of the parties' arguments related to the insufficiency of the bond the Alleged Debtors paid to stay the Judgment. Vega's *Response* and opening statement hammered on this point. ECF No. 55 ¶¶ 24–28. But this does not matter for § 303 purposes. A bond's sufficiency generally does not affect the Court's analysis of the existence of an ongoing, underlying dispute. The nature of the stay matters, not the amount paid to obtain it.

dispute. Just as an "appeal alone does not create a bona fide dispute," a stay alone does not create a bona fide dispute. *Henry S. Miller Comm.*, 418 B.R. at 922. And just as "an unstayed judgment does not create an irrebuttable presumption of no bona fide dispute," a stayed judgment does not create an irrebuttable presumption of a bona fide dispute. *Id.* at 921. The type of stay the Alleged Debtors rely on suggests they subjectively dispute the Judgment, but that stay does not by itself present an objective basis for a bona fide dispute.

The Alleged Debtors have not met their burden to establish the existence of a bona fide dispute. The Alleged Debtors do not point to a statement of issues or any appellate briefing establishing points of appeal. Instead, they point to arguments made within Exhibits 12 (Motion for Judgment Notwithstanding the Verdict) and 13 (Motion for New Trial). Arguments that the trial court overruled. Once overruled by the trial court, there is no longer a bona fide dispute for the bankruptcy court's purposes, unless some new case law, statute, or other legal support can be raised which challenges the Judgment. *See*, *e.g.*, *Henry S. Miller Comm.*, 418 B.R. at 921–22. The Alleged Debtors fail to point to any case law or statute, pre- or post-Judgment which would suggest these same failed arguments show a bona fide dispute.

The Alleged Debtors raised a fuss about Vega's discussion of other cases decided by Texas appellate courts that she believes supports her position. *See* ECF No. 55 ¶¶ 19–20. It is not the Court's role to conjure a bona fide dispute by examining these decisions in-depth and determine whether Vega's lawsuit is so like these cases that she will likely succeed on appeal. That argument should be made to the Texas Fourth Court of Appeals. But the absence of similar cases finding otherwise speaks to the lack of a bona fide dispute. The Alleged Debtors point to no authority suggesting the findings and conclusions of the Judgment are no longer good law.

Paying a modest sum to obtain bond procedurally staying a judgment does not evidence a bona fide dispute. Arguments raised in resolved litigation do not suggest bona fide dispute. Without any contrary evidence of a dispute issued after the Judgment, the Alleged Debtors have failed to rebut the presumption and the Court finds, for purposes of § 303(b) no bona fide dispute exists as to Vega's claim.

### 4. SECTION 303(b)

The amount of Vega's claim meets the other requirements of § 303(b). Vega's claim is for $25,812,566.21, which clears the $18,600 minimum set by Congress. ECF No. 1; § 303(b)(2). Thus, Vega is eligible to be a petitioning creditor.

### 5. SECTION 303(h)

Section 303(h) requires a petitioning creditor to prove that the involuntary debtor failed to pay their debts as they became due. The petitioning creditor bears the ultimate burden at trial to prove this point. *See*, *e.g.*, *In re Acis Cap. Mgmt., L.P.*, 584 B.R. 115, 143 (Bankr. N.D. Tex. 2018). Additionally, there is again a requirement that these debts not be subject to bona fide dispute. As discussed above, the burden-shifting framework applies to this point and once a petitioning creditor establishes a prima facie case no bona fide dispute exists, the debtor bears the burden of rebutting that presumption. *Green Hills Dev.*, 741 F.3d at 658.

Courts look at four factors to determine whether a debtor is paying their debts as they become due: "(i) the number of unpaid claims; (ii) the amount of such claims; (iii) the materiality of the non-payments; and (iv) the nature of the debtor's overall conduct in its financial affairs." *Hunt*, 2018 WL 3586712, at *3; *In re Bates*, 545 B.R. 183, 186 (Bankr. W.D. Tex. 2016).

The Alleged Debtors share two creditors: Vega and JMI. Marbach has at least two more creditors: the Texas Comptroller and GDR. Diamond may have another: the IRS, but there is insufficient evidence to definitively say.[6]

### A. THE SHARED DEBTS

Vega's claim is not subject to bona fide dispute, but the Alleged Debtors argue it was not due at the petition date because the stay on the Judgment made it immediately unenforceable and therefore uncollectible at that time. This argument fails for two reasons.

First, the Bankruptcy Code defines debts very broadly: "liability on a claim." § 101(12). "Claim" is in-turn defined with similar expanse to include "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 101(5)(A). The Judgment declares the Alleged Debtors owe Vega an amount of money. The Alleged Debtors are liable for that debt, unless that Judgment is overturned. That debt was due, even if disputed, contingent, or unmatured, once the Judgment was entered (this is why there is post-judgment interest on damages awards). Therefore, as of the petition date, the Alleged Debtors owed money to Vega, even if they disputed the amount or liability, and the debt, thus, was enforceable, even if not *immediately* enforceable.

Second, the Texas Rules of Appellate Procedure confirm an appealed damages judgment is still due. Even if a judgment is stayed, the rules characterize the parties as "judgment debtor" and "judgment creditor." TEX. R. APP. P. 24.1. As a judgment creditor is still a creditor entitled to payment, even if not immediately, an amount is still due. And a judgment debtor is still liable for the judgment amount. Vega was still a judgment creditor and the Alleged Debtors, judgment

---

[6] The Court notes that because of the procedural posture and nature of involuntary bankruptcies, it is possible that more creditors exist, as not everyone has gotten notice of the Alleged Debtors' bankruptcy cases. Without an order for relief, there is no notice given to creditors other than what is voluntarily undertaken by the parties to the bankruptcy.

debtors who owed a debt as of the petition date. Therefore, Vega's claim is enforceable and qualifies for § 303(h) purposes.

JMI, if a creditor, would have a claim that might be subject to bona fide dispute as of the petition date. This fact, however, is disputed and cannot be resolved at this stage. Vega alleges JMI is another creditor who was not being paid and points to a state court insurance-claim lawsuit for support. ECF No. 55 ¶ 32. This lawsuit was brought by the Alleged Debtors and other plaintiffs (internally called "the Kobrinsky Entities") against their insurance company for a covered loss that the insurance had yet to pay out on. Vega's Ex. 18. The lawsuit mentions the insurance proceeds are needed to pay JMI about $10.5 million for repairs to the Polo Club Complex after Winter Storm Uri caused damages. *Id.* ¶¶ 66, 73. The lawsuit states that money is still owed to JMI. *Id.* ¶¶ 72–73 ("In addition, under Section 28.004 of the Texas Property Code, the Kobrinsky Entities owe JMI . . ., the 1.5% interest each month payment was overdue for all seven of the Kobrinsky Properties."). Thus, the evidence presented by Vega meets her low burden and creates a fact question about whether JMI was an unpaid creditor of the Alleged Debtors. *See*, *e.g.*, **eBackpack**, 605 B.R. at 134. The Alleged Debtors presented no evidence or testimony on JMI, the repairs performed, the amounts owed, or the status of any debts owed. The Alleged Debtors did not appear to dispute any amounts owed JMI in the federal court lawsuit, in the Alleged Debtors' *Amended Motion*, or in the hearing. At the very least, a fact issue exists as to whether JMI was a creditor holding a debt not subject to bona fide dispute as of the petition date. Thus, its potential claim counts for § 303(h) purposes at this stage.

### B.    MARBACH'S REMAINING DEBTS

Marbach has two more creditors: the Texas Comptroller and GDR.

As of the petition date, the Texas Comptroller held a claim for unpaid franchise taxes for about $1,600. PoC #1. Vega presented evidence of Marbach's post-petition payment of the Texas Comptroller's proof of claim as evidence that Marbach did not dispute this debt. Vega's Exs. 19–20. Marbach presented no evidence or argument to counter the undisputed nature of the Texas Comptroller's claim. Therefore, the Texas Comptroller's claim is an undisputed debt that may be counted for § 303(h) purposes.

Marbach also listed GDR as a creditor whose claim was unliquidated and in litigation. ECF No. 6. But Marbach says GDR has non-suited the case since the filing of the petition. *Id.*, p. 2. There are two reasons this non-suit does not matter. First, the non-suit is without prejudice; a claim still exists and GDR is still a creditor with the option to exercise whatever rights it may have under the law. Second, the post-petition non-suit does not matter for § 303(h) purposes because debts are established as of the petition date. ***Acis Cap. Mgmt.***, 584 B.R. at 143–44; ***Bates***, 545 B.R. at 187; ***Norris***, 183 B.R. at 450.

That a lawsuit is pending is good evidence of a bona fide dispute, but not definitive. *See, e.g.*, ***ArtiusID***, 673 B.R. at 361. This is true particularly where, as is the case here, it is the creditor that has brought suit. Marbach presented no evidence or argument on whether GDR's claim was disputed as of the petition date. Thus, a fact issue still exists as to whether there is an objective basis for the dispute presented in GDR's lawsuit against Marbach.

## C.  DIAMOND'S REMAINING DEBT

Diamond is adamant that Vega is its only creditor. ECF No. 30 ¶ 47; Case No. 25-50816, ECF No. 6. But the Court has already pointed out that JMI may have been a creditor as of the petition date, and Vega has suggested the IRS may be one as well. Diamond presented no evidence on its potential federal tax liability. Vega complained that Diamond could not provide evidence of

a tax return and that Diamond's president had no idea whether Diamond filed a tax return for its last year of operations. The absence of evidence may not be evidence of absence. But it may create a question about the evidence of absence, i.e. whether Diamond owes back taxes to the IRS, and at the summary judgment stage, that is all that is required. There is still a question of whether and in what amount, if any, Diamond owed the IRS as of the petition date.

### D.    THE FACTORS

The evidence presented suggests that as of the petition date Marbach could have had four unpaid claims totalling $36,430,276.10, and Diamond could have had three unpaid claims totalling $36,428,852.55.

The materiality of the unknown GDR claim for Marbach and the unknown IRS claim for Diamond cannot be determined, but the Texas Comptroller's *de minimis* claim of a couple of thousand dollars has limited material effect in this analysis. Still, each of the Alleged Debtors owed $36 million to creditors. This is a substantial sum of money, particularly given Diamond's assertion that it has a net worth of zero dollars, and Marbach's assertion that its net worth is $27,974.83—less than 0.1% of its debts. Most of that debt arises from Vega's Judgment and the amounts that may be owed to JMI.

Beyond the woeful undercapitalization of the Alleged Debtors, Diamond and Marbach's corporate representatives appeared under- (or in Diamond's case un-) informed as to their entities' finances. Diamond's president did not know about Diamond's tax returns or other tax liabilities and could not say where financial documents were or what they would show. Vega's Ex. 21, pp. 22:22–25, 25:13–25, 29:1–30:17; 40:1–5. Diamond said it does not have the assets to pay off its debts. *Id.* at p. 55:17–22.

Marbach's manager said it may put more money into Marbach for operations, but not until after all its litigation is concluded. Vega's Ex. 6, p. 163:3–8. Marbach's manager also discussed how $7 million was taken out of Marbach in the form of a distribution to himself. *Id.* at pp. 99:23–101:19, 206:3–207:3. Vega's counsel made statements to the effect—and Marbach's manager's deposition corroborated this assertion—that about $24 million dollars has been pulled out of Marbach in the form of member distributions and payments to non-member employees. Vega's Ex. 6, pp. 56:13–58:8; 70:1–17; 99:23–101:19. There is evidence to suggest Marbach may have dumped its assets and transferred the proceeds to avoid paying Vega's Judgment. *Id.* at 55:5–25, 85:10–15. Marbach's manager also said about $2.5 million is missing after the sale of its apartment complex and the later distributions. *Id.* at p. 100:9–14. This kind of mismanagement gives the Court concern and counsels that the Alleged Debtors were not paying their debts as they became due and are appropriate candidates for bankruptcy.

If failure to pay one creditor suffices to show that a debtor is not generally paying its debts, the Alleged Debtors' failure to pay all known creditors suffices to show the same. ***Bates***, 545 B.R. at 190. There are substantial outstanding debts owed by the Alleged Debtors. All known creditors as of the petition date may have held unpaid claims of over $35 million dollars for entities that may have less than $50,000 in assets combined. None of the material debts were being paid and this suggests the Alleged Debtors were not paying any debts as they became due. Finally, the Alleged Debtors' apparent financial inconsistencies and misunderstandings support the notion that they were not paying their debts. A fact question exists as to whether any creditor was being paid on their claim as of the petition date. Therefore, Vega survives the Alleged Debtors' summary judgment motion regarding satisfaction of § 303(h).

17

**b.    ABSTENTION**

The Alleged Debtors argue that even if § 303's requirements are met, the Court should permissively abstain under § 305 because abstention is in the best interest of creditors as this is purely a two-party dispute that should be left to the pending state court appeals process. Vega argues the Court should not abstain because there is evidence the Alleged Debtors have fraudulently transferred significant assets and a chapter 7 trustee is needed to investigate and pursue such claims since by the end of the Alleged Debtors' appeal of the Judgment, these claims will be time-barred.

Section 305 governs permissive abstention and states: "(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—(1) the interests of creditors and the debtor would be better served by such dismissal or suspension." § 305(a). Dismissal under § 305(a)(1) is an extraordinary remedy that requires the Court to conduct more than a mere balancing of interests. *Acis Cap. Mgmt.*, 584 B.R. at 145. As the party seeking abstention, it is the Alleged Debtors burden to show abstention benefits them and their creditors. *Id.*; *In re Deluxe Bldg. Sols., LLC*, Case No. 21-00534, 2023 WL 6799287, at *14 (Bankr. M.D. Pa. Oct. 13, 2023).

The Fifth Circuit has yet to lay out factors for bankruptcy courts to consider when weighing abstention under § 305(a).[7] But several bankruptcy courts have posited the appropriate factors to consider in determining whether abstention is appropriate:

(1)    the economy and efficiency of administration;

---

[7] Pre-BAPCPA, the Fifth Circuit cited a case out of the Southern District of Texas that laid out 12 factors that may guide a bankruptcy court's decision. *Barone v. Do (In re Barone)*, 96 F.3d 1444, 1444 (5th Cir. 1996) (citing *In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 428 (S.D. Tex. 1987)). But these cases considered a more discretionary version of permissive abstention governed by 28 U.S.C. § 1334(c)(1) ("[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding . . . ."). And yet, there may be wisdom in some factors identified. *Republic Reader's Serv.*, 81 B.R. at 429.

18

(2)     whether another forum is available to protect the interests of the debtor and its

          creditors or whether there is a preexisting pending proceeding;

(3)     whether an alternative means could achieve an equitable distribution of assets;

(4)     whether a state insolvency case has proceeded so far that it would be too costly and

          time consuming to start afresh with the federal bankruptcy process;

(5)     whether bankruptcy is necessary to protect assets of the estate;

(6)     whether bankruptcy is necessary to reach a just and equitable solution;

(7)     whether the debtor and the creditors are able to work out a less expensive out-of-

          court arrangement which better serves all interests in the case;

(8)     the purpose of the bankruptcy; and

(9)     the effect bankruptcy has on the rights of the debtor or any creditors.

*Acis Cap. Mgmt.*, 584 B.R. at 145; *Republic Reader's Serv.*, 81 B.R. at 429. Not all factors are

given equal weight. *Seven Three Distilling*, 2021 WL 3814802, at *9; *In re Newbury Operating

LLC*, Case No. 20-12976, 2021 WL 1157977, at *10 (Bankr. S.D.N.Y. Mar. 25, 2021).

The Alleged Debtors hang their hat on the existence of alternative protections for Vega,

such as the Alleged Debtors' supersedeas bond and insurance policy.[8] These arguments may be

relevant for factors two through seven, but they do not address the interests of the Alleged Debtors'

other creditors. That Vega could be protected in another forum, in pending litigation, or by bonds

or insurance coverage does nothing for the interests of other creditors.

### 1.     THE ECONOMY AND EFFICIENCY OF ADMINISTRATION

This first factor considers whether administration of a case in bankruptcy court is

needlessly costly or disruptive to the debtor's business. Similar to a previous debtor before the

---

[8] The Alleged Debtors' supersedeas bond and insurance policy arguments also assume the pre-petition value of
potentially avoidable transfers is zero, which is a fact question.

Court, the Alleged Debtors have ceased all operations. *See Traxcell Tech.*, 657 B.R. at 464. But unlike Traxcell Technologies, the Alleged Debtors here were not foisted into bankruptcy when an orderly liquidation was already underway by a state receiver. *Id.* Instead, the Alleged Debtors controlled their own fate and had stopped functioning and already sold almost all of their assets and distributed proceeds from those sales to insiders and others. Such facts suggest bankruptcy "is the most efficient and economical forum to complete this liquidation and distribute whatever assets remain to creditors" in an orderly and fair manner. *Acis Cap. Mgmt.*, 584 B.R. at 146. There is no evidence that keeping the cases would disrupt any outstanding wind-down procedures or responsibilities.

Keeping the case does not disrupt the Alleged Debtors' non-existent business operations. This factor weighs in favor of keeping the case.

## 2. THE EXISTENCE OF AN ALTERNATIVE FORUM

The second factor looks at whether bankruptcy is merely being used as a collection device in a two-party dispute, or whether bankruptcy will prove duplicitous or uneconomical. *Acis Cap. Mgmt.*, 584 B.R. at 146; *Newbury Operating*, 2021 WL 1157977, at *11. A suitable alternate forum may exist where "there are pending arrangements that will equitably satisfy [] creditors and not be unduly burdensome or prejudicial to the debtor. *Newbury Operating*, 2021 WL 1157977, at *11. The second factor closely aligns with the third and fourth factors' exploration of the existence or progression of another way to ensure an equitable distribution of assets.

The *pre-existence* of a state court judgment and appeal proceeding to adjudicate the dispute between Vega and the Alleged Debtors generally weighs in favor of abstention, but the Judgment entered and appealed only deals with Vega's debt. Here, the alternative forum question asks whether the bankruptcy filing serves as an extension of Vega's collection activity or a collective

action that might benefit all of the Alleged Debtors' creditors in lieu of some other collective action in state court. While Vega might initiate a derivative state court fraudulent transfer action and even seek the appointment of a receiver for the Alleged Debtors, such an action would cause Vega to bear all the risk and incur all the costs of what would be a community recovery, should the Alleged Debtors' transfers be avoided. Thus, while an alternative forum exists to address Vega's concerns, no suitable proceeding is pending and it is not clear the state court forum would be the more efficient forum for a derivative fraudulent transfer action.

Only a bankruptcy court or state court receiver could protect all the Alleged Debtors' creditors, including those other than Vega (and the Texas Comptroller) who appear to have not received notice of these bankruptcy cases, even after the Alleged Debtors identified them on their *List of Creditors*. Case No. 25-50815, ECF No. 6; Case No. 25-50816, ECF No. 6. The Court must consider the comparative advantage to all creditors of each forum. No state receivership has been sought for either Alleged Debtor. Other than the Alleged Debtors' appeal of Vega's Judgment, no pending lawsuit exists—GDR's lawsuit was non-suited post-petition but pre-*Amended Motion*.

Were Vega the Alleged Debtors' only creditor, an amalgam of adequate alternative forums may exist. But no forum is currently in use which would benefit all the Alleged Debtors' creditors. The equities with respect to the third and fourth factors support retaining the cases. The second factor, although a tad closer, also supports retaining the cases to protect all the Alleged Debtors' creditors.

### 3.    WHETHER BANKRUPTCY IS NECESSARY

Factors five, six, and seven ask whether the creditors and debtor can work out there issues out of court, or is bankruptcy needed to protect the debtor's assets and ensure a solution that treats all parties fairly?

Diamond has asserted it has no assets that need protecting—but Diamond glosses over and ignores potentially viable fraudulent transfer causes of action discussed above. A "no asset" determination suggests the Alleged Debtors place no value on any potential fraudulent transfer or avoidance causes of action the Alleged Debtors may own. A bankruptcy trustee might reasonably have a different view. Marbach has apparently already liquidated assets and distributed proceeds to its members. It appears this was done by transferring title of its Polo Club Complex to its members before selling the apartment complex so that proceeds could go directly to its members and not Marbach. This apparent self-dealing circumstantially suggests that instead of looking out for the best interest of creditors, Marbach's principals may have sought to shield Marbach's assets from such creditors. As of the petition date, the only assets either Alleged Debtor may have had were voidable transfer actions. While its true such assets, to the extent viable, might be recovered through a derivative state court action, the costs of any such action (including the risk of failure) would be borne by only the moving creditor, whereas a bankruptcy trustee might better spread the risks and cost of pursuit of such actions among all creditors, and therefore arguably be more appropriate, desirable, and efficient. Factor five, therefore, supports retention of the cases.

Other factors within this family also support retaining the cases. Although a state court lawsuit could allow for the recovery of any fraudulent transfer that might exist and related receivership relief that might be requested, bankruptcy offers a single forum to recover assets and ensure an equitable distribution to creditors. And finally, there is no evidence the Alleged Debtors and Vega could work out their disagreement outside the courts. The Alleged Debtors appeal could proceed and that might ultimately end their dispute. But the Alleged Debtors presented no evidence this would be any less expensive than remaining in bankruptcy. Particularly if Vega insists on pursuing any voidable transfer action, such a lawsuit would be just as expensive in state court as

it would be in bankruptcy court. The added expense of a chapter 7 trustee's fees and costs are not expected to be any greater than it might be to put in place a receiver, and no evidence was submitted that those expenses would outweigh any state court litigation costs. Therefore, factors six and seven support retaining the cases.

### 4. THIS JOINTLY ADMINISTERED BANKRUPTCY'S PURPOSE AND EFFECT ON THE ALLEGED DEBTORS' AND CREDITORS' RIGHTS

The penultimate factor is essentially a test of the petitioner's good faith and asks whether there is a true bankruptcy purpose, particularly when the case purports to posture as a two-party dispute. *In re Efron*, 529 B.R. 396, 406 (B.A.P. 1st Cir. 2015). The final factor considers the effect of the bankruptcy on the debtor and its creditors.

Just as abstention under § 305(a) is an extreme remedy, an involuntary petition is equally extreme. It is extreme because of the potential burden posed by forcing an involuntary debtor into bankruptcy, and the potential delay to creditors collection efforts or risk of those efforts being derailed. As such, some have suggested this factor is entitled to elevated significance in a § 305(a) abstention analysis. *Newbury Operating*, 2021 WL 1157977, at *11. In an involuntary case, the bankruptcy court looks to whether the creditor is using bankruptcy as *their* debt collection tool or a *collective* debt collection tool. *Newbury Operating*, 2021 WL 1157977, at *11; *Acis Cap. Mgmt.*, 584 B.R. at 148.

Creditors using bankruptcy as a debt collection tool is not per se inappropriate. *Marciano v. Chapnick (In re Marciano)*, 459 B.R. 27, 50 (B.A.P. 9th Cir. 2011). When a single creditor files an involuntary bankruptcy case to ensure an equitable distribution for all creditors, good faith may be found. *Id.*; *Acis Cap. Mgmt.*, 584 B.R. at 148. Such is the case here.

Vega filed the involuntary bankruptcies to collect on her Judgment. Vega wants to use the bankruptcy process to recover any assets of the Alleged Debtors to ensure she gets paid her

23

Judgment. Vega suggested a chapter 7 trustee could pursue voidable transfer actions to bring assets back into the estate that have been sold while their litigation was pending. Were Vega the Alleged Debtors' only creditor, this might have been improper. Were Vega a secured creditor and the property transferred her collateral, this might have been improper. Were Vega a shareholder upset with the Alleged Debtors' management or transfer of assets or interests, this might have been improper. But none of those factual scenarios apply here. The Alleged Debtors have other creditors who were not being paid. Those creditors benefit from this bankruptcy in the same way Vega does. Appointment of a chapter 7 trustee to investigate and, if appropriate and necessary, litigate voidable transfers, benefits all creditors, not just Vega.[9]

Vega's filing of the involuntary bankruptcies seeks to use bankruptcy as a collective debt collection tool for all of the Alleged Debtors' creditors benefit. Thus, the purpose of the bankruptcies is appropriate and this factor supports keeping the cases.

Here, if an order for relief is entered, the Alleged Debtors must surrender property to a chapter 7 trustee and allow the trustee to collect and distribute any assets to their creditors. It takes control out of the hands of the Alleged Debtors. Were the Alleged Debtors operating, this would cause much discomfort and negatively impact them. But they are not operating. These Alleged Debtors were already in wind down mode, they simply appear to have been winding down for the benefit of their principals rather than their creditors. For the creditors, the bankruptcies reverse that, allowing collective recovery actions for the benefit of creditors with only minor hardship and a loss of control for the Alleged Debtors. Given the evidence presented, including the lack of evidence suggesting any significant hardship for the Alleged Debtors, this final factor supports retaining the cases

---

[9] Moreover, a chapter 7 trustee is always free to seek to abandon assets if the trustee determines pursuit of such assets is not worth the time and energy necessary to collect them.

To avoid a rush to the courthouse, and to avoid prioritizing some creditors over others, bankruptcy appears to be "the most efficient and fair way to collect and marshal" the Alleged Debtors' assets to ensure an orderly distribution to all creditors. *In re Diamondhead Casino Corp.*, Case No. 24-11354, 2025 WL 2169864, at *15 (Bankr. D. Del. July 30, 2025). Therefore, the Court will not abstain.

### c. BAD FAITH

The Alleged Debtors ask the Court to find Vega acted in bad faith in the filing of these involuntary petitions against them. ECF No 30 ¶ 50. Even if all elements of § 303 are met, the Court may dismiss a case filed in bad faith. *See Bates*, 545 B.R. at 192 (citing *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 333–34 (3d Cir. 2015) ("[B]y including an express reference to bad faith in § 303, Congress intended for bad faith to serve as a basis for both dismissal and damages.")).

Congress recognized involuntary bankruptcy is a severe remedy and there are only limited circumstances in which a creditor can force a debtor into bankruptcy. *Green Hills Dev.*, 741 F.3d at 655. And yet, bankruptcy courts in the Northern and Eastern Districts of Texas have recognized there is a presumption that a petitioning creditor acted in good faith in filing an involuntary petition. *See Aigner v. McMillan*, Case No. 11–47029, 2013 WL 2445042, at *5 (Bankr. N.D. Tex. June 4, 2013), *aff'd In re McMillan*, 614 F.App'x 206, 211 (5th Cir. 2015); *In re TRED Holdings, L.P.*, Case No. 10–40749, 2010 WL 3516171, at *7 (Bankr. E.D. Tex. Sept. 3, 2010).

An involuntary bankruptcy is not appropriate if a creditor is seeking the equitable power of the bankruptcy court strictly to gain a litigation advantage. *In re Privada, Inc.*, Case No. 07–10940, 2008 WL 4692372, at *3, 5 (Bankr. W.D. Tex. Oct. 22, 2008) ("Commencement of a case

under title 11 should not create a weapon for dissident creditors to attempt to increase their negotiating leverage to the detriment of a debtor and its other creditors.").

The case law on bad faith factors to be considered is inconsistent. *See **In re Acis Cap. Mgmt., L.P.**, 604 B.R. 484, 530–31 (N.D. Tex. 2019) (laying out 5 different tests). The Third Circuit has indicated that "courts have applied a dizzying array of standards." **Forever Green Athletic Fields**, 804 F.3d at 335. In determining whether a creditor filed an involuntary petition in bad faith, bankruptcy courts should look at the totality of the circumstances, including objective and subjective factors. **Acis Cap. Mgmt.**, 604 B.R. at 531; **TRED Holdings**, 2010 WL 3516171, at *7. The Fifth Circuit has explicitly considered whether "the filing of the petitions was motivated by ill will, malice or for the purpose of embarrassing or harassing the debtors." **Sims**, 994 F.2d at 222 (internal quotations and alterations omitted).

The Alleged Debtors' *Brief* cites three factors courts should consider when determining whether an involuntary petition was filed in bad faith: "(i) whether the matter is a two-party dispute, (ii) whether it is a litigation tactic, and (iii) whether the petitioning creditor's actions run counter to the spirit of collective creditor action that should animate an involuntary filing." ECF No. 30 ¶ 51 (internal quotations omitted). Vega offers no help on this point.

The Court has found Vega eligible to be a petitioning creditor under § 303(b) and that the Alleged Debtors may not have been paying their debts as they became due under § 303(h). The Court also has declined to abstain. Evidence in those analyses suggests Vega did not file this case in bad faith.

The Alleged Debtors stress that no other creditors have joined Vega as a petitioning creditor, but this truism is allowed under § 303(b), and therefore by definition cannot constitute bad faith. Moreover, it presumes the possible motivations of creditors that have not joined. Once

an involuntary petition is filed, creditors are disincentivized to join an involuntary petition by the fact that they may become liable for the attorney fees of a debtor successfully defeating such a petition. § 303(i); *see In re HL Builders*, 630 B.R. 32, 60 (Bankr. S.D. Tex. 2020) (awarding fees to an involuntary debtor against the petitioning creditors). So, it comes as no surprise that the few creditors in existence chose not to join the petitioner. Further, no evidence was presented on this point.

The Alleged Debtors argue the nature of each involuntary case is a two-party dispute that could have and should have remained in state court. This argument is similar to the one made by the alleged debtor in *Aigner*. There, the debtor and the creditor's principals were engaged in contentious state court litigation reduced to a judgment. *Aigner*, 2013 WL 2445042, at *1–3. Shortly after that judgment was entered, the creditor filed an involuntary petition against the debtor. *Id.* at 3. Although Judge Lynn ultimately found the creditor was ineligible to file the involuntary petition under Rule 1003(a) (creditor acquired a claim to commence the involuntary case), he declined to find the creditor acted in bad faith. *Id.* at 5–6. Judge Lynn arrived at this conclusion because there was no evidence of wrongful motives or objectives, but only that the creditor wanted to dedicate the debtor's assets to satisfying the debtor's debts, including the judgment held by the petitioning creditor. *Id.* at 4. On the other side of the coin, *Privada* involved a case in which the creditor was found to have acted in bad faith because it had no intention of pursuing an involuntary bankruptcy and only used the involuntary as a litigation tactic to stall or disrupt ongoing, unresolved state court litigation that was not moving in that creditor's favor. *Privada*, 2008 WL 4692372, at *4.

There is no evidence that Vega filed these involuntary petitions purely to harass or embarrass the Alleged Debtors. There is similarly no evidence the filings were motivated by ill

will. There is evidence, however, that Vega filed these petitions to preserve whatever assets the Alleged Debtors had to satisfy the Judgment. *See Aigner*, 2013 WL 2445042, at *4. Vega feared the Alleged Debtors were off-loading assets in hopes of avoiding paying Vega's Judgment. Vega's Ex. 3; Vega's Ex. 6, pp. 56:13–58:8, 85:10–18. This fear was ignited after the Alleged Debtors stayed the Judgment with a supersedeas bond worth nearly 0.05% of the Judgment, supported by a statement that Marbach's net worth is 0.1% of the Judgment and Diamond's net worth is $0. These statements conflicted with Vega's knowledge that Marbach owned the apartment complex she lived at—worth nearly $60 million. This significant and unexplained diminution of assets and the utter inadequacy of the bond could have suggested to a reasonable creditor that assets needed to be preserved for debts, including theirs, to be paid.

The Alleged Debtors say Vega could have conducted post-judgment discovery to learn whether this was occurring and filed a state court fraudulent transfer lawsuit. This is contested by Vega; she says she only suspected but did not know of the transfers; and that she sought post-judgment discovery to that end but none of the information now revealed was produced. Vega said the only reason she knows about Marbach's sale of its Polo Club Complex is because the Court authorized discovery on the Alleged Debtors' financials, including assets, liabilities, and other creditors. But even if Vega could have brought a fraudulent transfer lawsuit in state court, that does not mean the filing was in bad faith. Without other evidence that Vega filed only to collect on her claim, Vega's belief that the Alleged Debtors were taking steps to avoid paying her, and were likely doing the same to avoid paying other creditors, appears reasonable and motivated by a good faith attempt to implement a collective collection procedure. *See Acis Cap. Mgmt.*, 604 B.R. at 531–32 (finding a creditor who filed a petition for fear of the debtor's fraudulent transfers acted in good faith); *Bates*, 545 B.R. at 192 (finding a creditor who filed a petition for

28

fear of the debtor's financial misconduct acted in good faith); *Diamondhead Casino*, 2025 WL 2169864, at *9–11 (finding no bad faith where the debtor had dissipated assets even when state court collection or recovery procedures existed). There is no evidence Vega filed the involuntary petitions against the Alleged Debtors to stall or disrupt the Alleged Debtors' appeal of the Judgment. There is similarly no evidence Vega filed the petitions because the state court litigation was not proceeding in a way she liked.

Here, Vega is more akin to the creditor in *Aigner* than the creditor in *Privada*. Vega wants the Alleged Debtors in bankruptcy to boost her chances of collecting on her Judgment—not to the exclusion of other creditors—and not to harass or embarrass the Alleged Debtors. At the petition date, Vega knew she held a more than $25 million judgment against entities that claimed to now have less than $50,000 combined, despite owning and operating the 408-unit Polo Club Complex. Given these facts, and without evidence the involuntary petitions were filed as a litigation tactic, or that Vega acted with any other ulterior motive, the Alleged Debtors have failed to meet their burden of proving Vega acted with bad faith.

## V.   CONCLUSION

Because a procedural stay of a judgment does not by itself create a bona fide dispute and because the Alleged Debtors have not proven Vega's claim is subject to bona fide dispute, Vega is eligible to be a petitioning creditor under § 303(b). Because the Alleged Debtors were not regularly paying Vega and other creditors holding unpaid debts not subject to bona fide dispute, § 303(h)'s requirements are satisfied. Because it is in the creditors' best interest for the Alleged Debtors to remain in bankruptcy, the Court will not abstain. And because the Alleged Debtors have failed to meet their burden, the Court does not find Vega acted in bad faith.

For the reasons stated above, the Court will deny the Alleged Debtors' *Amended Motion* and hold a hearing to set a trial date when the Court will determine whether it should enter an order for relief in both of the above-captioned bankruptcy cases. It is, therefore,

**ORDERED** that the Alleged Debtors' *Amended Motion for Summary Judgment* (ECF No. 30) is **DENIED** and **DENIED WITHOUT PREJUDICE** as to the Alleged Debtors' abstention argument. It is further

**ORDERED** that the Court shall hold a status conference to discuss setting a trial date with the parties on **January 7, 2025 AT 9:30 A.M.** in the United States Bankruptcy Court for the Western District of Texas, Courtroom Number One, Third Floor, Hipolito F. Garcia Federal Building and United States Courthouse, 615 East Houston Street, San Antonio, Texas.

# # #